The GEORGIA DEPARTMENT OF TRANSPORTATION, and Thomas D. Moreland, Commissioner

v.

Mrs. Elizabeth DOLE, Secretary of the United States Department of Transportation; The United States Department of Transportation; R.A. Barnhart, Administrator, Federal Highway Administration; Leon Larson, Regional Administrator, Federal Highway Administration, Region 4; and Donato L. Altobelli, Division Administrator, Georgia Division, Federal Highway Administration.

Civ. No. 83–671.

United States District Court, N.D. Georgia, Atlanta Division.

April 11, 1983.

---

Michael Hobbs, Charles M. Richards, Asst. Atty. Gen., Atlanta, Ga., for plaintiff.

Jere Morehead, Curtis Anderson, Asst. U.S. Atty., Atlanta, Ga., for defendants.

## ORDER

ORINDA D. EVANS, District Judge.

On April 7, 1983, upon consideration of pleadings and evidence presented at a hearing at which both parties were present, the Court granted Plaintiffs' motion for a temporary restraining order enjoining Defendants from requiring the state of Georgia to permit oversized trucks on certain of Georgia's highways. Pursuant to the April 7 Order, the Court enters the following Order amplifying its reasons for granting the temporary injunction.

## I. FACTS

On December 18, 1982 and January 6, 1983 Congress enacted legislation allowing significantly larger tractor-semitrailer trucks to operate on the nation's interstate highway system and certain other highways receiving federal aid. The legislation enlarged weight, width and length allowances for such trucks over the limits previously set by most states, including Georgia. States must allow the wider and longer trucks both on interstate highways and certain other highways. States will be required to permit heavier trucks on interstate highways only. Georgia does not contest the new interstate weight limits and they are not an issue in this proceeding.

Section 321 of the Department of Transportation and Related Agencies Appropriations Act for 1983, Pub.L. No. 97–369, 96 Stat. 1765, 1784 (1982) (DOTAA) provides in part:

[N]o funds authorized to be appropriated for any fiscal year under provisions of the Federal-Aid Highway Act of 1956 shall hereafter be apportioned to any state which imposes a vehicle width limitation of more or less than 102 inches on any segment of the National System of Interstate and Defense Highways, or any other qualifying Federal-aid highways as designated by the Secretary of Transportation, with traffic lanes designed to be a width of twelve feet or more. . . .

The Act provides that no funds are to be withheld for noncompliance with this sec-

tion prior to October 1, 1983, in order to give states reasonable time to bring their laws into compliance.

Section 411 of the Surface Transportation Assistance Act of 1982, Pub.L. No. 97–424, 96 Stat. 2097 (1983) (STAA) requires that states must allow semitrailers of no less than 48 feet in length, must allow twin-trailer combinations, and may not set over-all length limits on tractor-semitrailer or tractor-twin-trailer combinations. Section 411 requires the states to allow the longer lengths on interstate highways and on "those classes of qualifying Federal-aid Primary System highways as designated by the Secretary...." The section authorized the Secretary of Transportation to establish rules to implement the new length limits and provided further that

> The Secretary shall designate as qualifying Federal-aid Primary System highways ... those Primary System highways that are capable of safely accommodating the [longer] vehicle lengths....

The Act directed the Secretary to make an initial designation of qualifying highways within 90 days and to enact final rules no later than 270 days from the date of enactment. Thus, unlike the width requirement, the new length requirements were to take effect on April 6, 1983. Finally, Section 413 authorized the Secretary to bring injunctive actions against any state to ensure compliance with the new length limits.

Pursuant to the statutory directive, the Secretary and the Federal Highway Administration (FHWA) published a Notice of Policy Statement on the new truck sizes in the Federal Register on February 3, 1983. 48 Fed.Reg. 5210 (1983). The policy statement defined "qualifying Federal-aid highways" for the purposes of both section 321 of the DOTAA and Section 411 of the STAA as "those sections of the Federal-aid Primary System which are divided highways with 4 or more lanes and full control of access...." The Secretary stated that, although states would be given until October 1, 1983 to enact legislation in compliance with the length limits, those states that prohibit larger trucks on interstate and qualifying roads might be subjected to injunctive action any time after the April 6, 1983 effective date.

In addition, the Secretary placed her interpretive gloss on the new statutes in the following passage.

> The intent of the legislation is to provide for the needs of interstate commerce by granting appropriate access to highways built with Federal-aid financial assistance without compromising the safety of the traveling public and the structural integrity of the highway system.

> The States are most familiar with their highway systems, including the structural capacity of bridges and pavements, traffic volumes, and unique climatic conditions. Also, the States are responsible for traffic regulation and enforcement. Therefore, the determination of highways for use by vehicles covered in this policy statement, in addition to the qualifying highways, ... and the determination of reasonable access will reside at the State level. The FHWA will intervene only in those instances where the needs of interstate commerce are being impeded.

48 Fed.Reg. at 5211.

After stating this policy of deference to the states, and defining "qualifying" highways under the new legislation, the Secretary stated that "the States may designate other Federal-aid Primary System highways that comply with safety and operational requirements, such as traffic lanes designed to be at least 12-feet wide and bridges structurally capable of accommodating the allowable loads." *Id.*

The Secretary then requested that each State highway agency provide to FHWA by March 15, 1983 a list of 1) all "Federal-aid Primary System highways, meeting the 4 or more lane, divided and full control of access criteria, which have been defined in this policy statement as 'qualifying highways'" and 2) all other roads that do not meet the definition of "qualifying highways" but which the States might designate for use by the new oversized trucks. *Id.* Finally, the Secretary established a public docket and invited comments on the policy statements

and her efforts to establish a final designation of highways by October 3, 1983.

In response to the FHWA request, Georgia identified 1168 miles of its interstate system and 140 miles of non-interstate, but "qualifying" highway. Georgia declined to designate any additional, non-qualifying roadways for use by the big trucks. On March 31, 1983, without further consultation with Georgia, and without consulting its Georgia division or southeastern regional office, the FHWA in Washington issued a new truck size policy statement with interim designations including 2800 additional miles of non-qualifying Georgia highways which, as stated, Georgia had declined to designate. The interim designation and policy statement were published in the Federal Register on April 5, 1983 and took effect on the following day. 48 Fed.Reg. 14844 (1983).

In the policy statement the FHWA defended its supplemental designation of non-qualifying, non-recommended highways as follows:

> The designated route submissions from many States were quite complete and provided extensive coverage. Other States, however, submitted unrealistically lean designations. In assessing these States' responses we find that many of the less comprehensive designations were attributable to constraints imposed by State legislative or administrative requirements, such as a need for public hearings. Thus, some States were unable to comply with the intent of the February 3 policy statement. Several States have designated unconnected and fragmented highway segments. A designated network that contains such discontinuities or that fails to provide reasonable coverage in addition to the Interstate System would not meet the objectives of the STAA to facilitate the free flow of commerce.

48 Fed.Reg. at 14844.

Finally, the FHWA stated that "[e]xceptions to the interim designated network may be granted by FHWA upon request by the States on a case by case basis where road segments will not safely accommodate the larger vehicles due to structural or geometric limitations." 48 Fed.Reg. at 14845.

The State of Georgia brought this action for injunctive and declaratory relief from implementation of the FHWA designations on the grounds that the Secretary and FHWA exceeded their statutory authority under the DOTAA and STAA and their rulemaking power under the Administrative Procedure Act, 5 U.S.C. §§ 551 *et seq.* Georgia did not contest the agency's action with respect to the interstate system or qualifying highways, but only as to the supplemental designation of non-qualifying highways which the state itself had declined to recommend. The Court took jurisdiction under 28 U.S.C. §§ 1331 and 1346 and 49 U.S.C. § 1655. On April 7, 1983 the Court stayed enforcement of the designation as to the supplemental, non-qualifying highway only.

## II. DISCUSSION

The new truck size legislation authorized the Secretary to designate qualifying highways by reference to their capability to safely accommodate larger vehicles. There was no explicit or implicit statutory authority for the Secretary or FHWA to designate highways other than "qualifying" highways. In the February 3, 1983 Notice of Policy Statement, the Secretary defined qualifying highways pursuant to the statutory mandate, and reiterated the statutory requirement that the needs of interstate commerce be served "without compromising the safety of the traveling public and the structural integrity of the highway system." The Secretary then expressly stated that the prerogative to designate roads other than qualifying highways would lie with the states due to their familiarity with local structural, traffic and climatic conditions. The Secretary allowed for a narrow exception to the states' prerogatives as to non-qualifying highways "only in those instances where the needs of interstate commerce are being impeded."

Having defined and designated qualifying highways, the Secretary was not

free, under either the terms of the statute or the notice of policy statement, to make wholesale designations of other, non-qualifying highways. Moreover, the supplemental designations were made in disregard of Congress' concern that the FHWA investigate their safety, and of the Secretary's policy that the states would have primary, if not sole, responsibility for such designations. FHWA Regional Administrator Leon Larson testified that the interim designations were made without consulting Georgia highway officials and without any inquiry by federal officials into the capacity of the 2800 miles of non-qualifying roadway to safely accommodate the larger trucks.[1] Indeed, the designations were apparently made by computer in Washington, without even the input of the FHWA regional or division offices, those federal offices that would have been most likely to be familiar with the nature of the additional mileage.

Congressional intent in enacting the new legislation undoubtedly was to promote interstate commerce by allowing more goods to travel the nation's highways in larger vehicles. But Congress was also concerned that it be done safely, and the statutory language is quite clear that only safe, "qualified" highways be designed to handle such traffic. To suggest, as did the Secretary at the hearing before the Court, that the interim supplemental designations were justified by the FHWA's power to "intervene" where commerce is being "impeded" would be to allow the administrative exception to swallow the statutory rule.

■ In addition to exceeding statutory authority, the supplemental designations violated notice and comment requirements of the Administrative Procedure Act, 5 U.S.C. § 553. It might be argued that, because the Secretary's February 3 and March 31 pronouncements took the form of general policy statements, they are exempt from notice and comment requirements under 5 U.S.C. § 553(b)(A). Although it is certainly true that the Secretary is entitled to a great deal of flexibility in formulating administrative policy and interpreting enabling legislation, and that the Secretary could amend the policy by, for example, redefining "qualifying" highways, the broad flexibility and exemption from notice and comment given to policy statements may be tolerated only so long as the policy statement does not seek to establish a substantive norm of conduct. The interim designations, however, became effective April 6, 1983, and FHWA Regional Administrator Larson testified that states are expected to comply as of that date. States that fail to comply are subject to injunctive action.

The FHWA has thus gone beyond a general statement of policy and has sought to establish a binding administrative rule without giving the states an opportunity for input. Notwithstanding the "policy statement" label which was attached to the designations, "an agency cannot escape its responsibility to present evidence and reasoning supporting its substantive rules by announcing binding precedent in the form of a general statement of policy." *Pacific Gas & Electric Co. v. FPC,* 506 F.2d 33, 38–39 (D.C.Cir.1974).

■ The Secretary argued that, because this is an interim rule, with final rulemaking proceedings ongoing until October 1983, Plaintiffs should be required to exhaust administrative remedies before taking their challenge to federal court. It is generally true that interim agency actions are not reviewable, 5 U.S.C. § 704, and that parties to administrative proceedings must exhaust their remedies with the agency. The exhaustion doctrine does not, however, bar intervention where agency action exceeds statutory authorization.

Many courts have noted that when an agency acts in defiance of its statutory

---

1. The Court heard testimony and statistical evidence from state officials that tractor-trailers generally pose a significantly greater·risk of accidents and fatalities than do other forms of traffic on the state's highways. According to statistics compiled by Georgia highway engineer Hal Rives, the rate of accidents involving tractor-trailers on the supplemental routes designated by FHWA is nearly three times the rate for all vehicles traveling those roads. The rate for fatal accidents is about 15 times greater.

authorization the District Courts do not have to wait for the underlying proceedings to run their course. Instead, the Federal Courts can intervene to preserve the status quo and prevent the infringement of substantial rights that might otherwise be sacrificed.

*McCormick v. Hirsch,* 460 F.Supp. 1337, 1345 n. 29 (M.D.Pa.1977) (and cases cited therein).

The Court is aware that the exceptions to the exhaustion and finality doctrines which allow equitable intervention in administrative proceedings are narrow and the Court does not lightly intervene in this action. The Court cannot escape the conclusion, however, that the interim designations clearly exceeded statutory authority as well as the requirements of administrative process. In addition, the Court's action will not substantially interfere with or delay the agency's goals; ongoing final rulemaking proceedings, in which state authorities are to have meaningful input, are unaffected by the Court's Order. Nor will the needs of interstate commerce be substantially impaired in the interim; oversized trucks may travel on interstate and other qualifying highways throughout Georgia.

From all that has been said, the Court finds that Plaintiffs have satisfied the requirements for a temporary restraining order. *See Southern Monorail Co. v. Robbins & Myers, Inc.,* 666 F.2d 185, 186 (5th Cir. 1982). First, introduction of oversized trucks on non-qualifying highways without *any* inquiry into the capacity of the highways to safely accommodate the trucks poses a significant risk to traffic safety so as to constitute the necessary showing of harm. *See* note 1 *supra.* Moreover, allowing the trucks to operate at this point would put the State of Georgia to the impossible choice of tolerating the risk or ignoring the FHWA mandate and risking injunctive action and, perhaps, other legal liability. Second, as should now be clear, the Court finds a substantial likelihood that Plaintiffs would be successful on the merits in their challenge to the agency action. Finally, a temporary stay of the order will serve the public interest in safety, an interest that for the time being outweighs the incremental benefit to interstate commerce.

By agreement of the parties, the temporary restraining order will remain in effect at least until April 27, 1983, when this matter will again come on for hearing.

SO ORDERED, this 11 day of April, 1983.