566 F.Supp. 571 (1983)
UNITED STATES of America, Elizabeth Hanford Dole, Secretary of the Department of Transportation, and R.A. Barnhart, Administrator of the Federal Highway Administration
v.
STATE OF CONNECTICUT, William A. O'Neill, in his official capacity as Governor of Connecticut, Joseph I. Lieberman, in his official capacity as Attorney General of Connecticut, Lester Forst, in his official capacities as Acting Commissioner of State Police of Connecticut and Commissioner of Public Safety of Connecticut, J. William Burns, in his official capacity as Commissioner of Transportation of Connecticut, Benjamin A. Muzio, in his official capacity as Commissioner of Motor Vehicles of Connecticut.
Civ. No. H-83-445.
United States District Court, D. Connecticut.
June 13, 1983.
*572 Mark C. Rutzick, Civ. Div., J. Paul McGrath, Asst. Atty. Gen., U.S. Dept. of Justice, Washington, D.C., Alan H. Nevas, U.S. Atty., Albert S. Dabrowski, Asst. U.S. Atty., D. Conn., Hartford, Conn., David J. Anderson, Robert D. Nesler, U.S. Dept. of Justice, Kenneth N. Weinstein, Cleveland Thornton, U.S. Dept. of Transp., Washington, D.C., Donald L. Ivers, Chief Counsel, Federal Highway Admin., Washington, D.C., for plaintiffs.
Joseph I. Lieberman, Atty. Gen., Elliot F. Gerson, Deputy Atty. Gen., State of Conn., Arnold K. Shimelman, Susan T. Pearlman, Elena S. Boisvert, Katherine Mobley, Francis MacGregor, Kenneth Graham, MaryAnne Mulholland, Hartford, Conn., Phyllis E. Lemell, New Britain, Conn., Asst. Attys. Gen., Henry Cohn, Sp. Asst. Atty. Gen., Neil G. Fishman, Staff Atty., Rochelle Homelson, Legal Asst., Kyle Ballou, Bernard David, Law Clerks, Hartford, Conn., for defendants.

RULING ON MOTION FOR PRELIMINARY INJUNCTION
JOSE A. CABRANES, District Judge:
The United States seeks a preliminary injunction barring enforcement by the defendant State of Connecticut of its recently enacted statute prohibiting so-called "tandem trailers" on Connecticut highways. In support of its motion, the United States asserts that Connecticut's statute is preempted by an act of Congress, the Surface Transportation Assistance Act of 1982, 49 U.S.C. § 2301 et seq. In opposition to the United States' motion, Connecticut argues that there is no conflict between the Federal statute and at least some provisions of the State statute; that the Federal law is unconstitutional; and that regulations promulgated by the Federal Highway Administration pursuant to the Federal statute are illegal.
The court is mindful that this case has aroused public concern and controversy.[1] It would, however, be misleading to characterize the constitutional and legal issues as difficult matters. The principles upon which the court must base its decision are as old as the Republic itself and deeply embedded in our history as a nation. For the reasons set forth below, the United States' motion must be granted.

I.
In 1956, the United States Congress decided to authorize a nationwide system of highways to be constructed by the states but with the assistance of Federal funds. As that system has evolved over the years, different types of federally-funded highways have been established. Most federally-funded highways  including some referred to as the Primary System  have three-quarters of their cost funded by the Federal Government. One particular group of highways  the Interstate System  has ninety per cent of its cost supplied from the Federal fisc.
*573 On January 6, 1983, Congress enacted the Surface Transportation Assistance Act of 1982 ("STAA"), 49 U.S.C. § 2301 et seq. Section 411(c) of the STAA, 49 U.S.C. § 2311(c), provides that states may not prohibit tandem trailers, defined as single truck tractors with two trailing units, from any part of the Interstate System or from parts of the Primary System designated by the Secretary of Transportation.[2]
On April 5, 1983, the Connecticut General Assembly enacted, and Connecticut Governor William A. O'Neill signed into law, Public Act No. 83-21, "An Act Concerning Tandem Trailer Trucks" ("the Connecticut statute"). Section 2 of the Connecticut statute prohibits tandem trailers from using highways in the State.[3] Section 3 of the Connecticut statute sets forth various provisions designed to restrict the use of tandem trailers on highways in the State, in the event that a court of competent jurisdiction enjoins enforcement of Section 2.[4]
On May 27, 1983, the United States commenced this case by filing a Complaint, a Motion for Preliminary Injunction, and a Memorandum of Points and Authorities in Support of Motion for Preliminary Injunction. The State of Connecticut filed its Answer on June 6, 1983 and its Memorandum in Opposition to Motion for Preliminary Injunction ("Connecticut Memorandum") on June 8, 1983. Also on June 8, 1983, the United States filed a Plaintiffs' Reply Memorandum in Support of Motion for Preliminary Injunction. A separate set of papers was filed by the parties in connection with the United States' Motion to Preclude *574 Evidence (filed June 3, 1983), which the court denied by ruling filed June 8, 1983. Conferences with counsel were held in chambers (partly on the record) and in open court on May 31, 1983 and June 3, 1983, at which the court considered and acted upon various applications regarding pre-trial proceedings. On June 9, 1983, a day-long evidentiary hearing on the motion for a preliminary injunction was held before the court, at which the State offered the testimony of nine witnesses on safety, legislative and regulatory issues.

II.
Proper consideration of the motion for a preliminary injunction must begin with an understanding of what this case involves. Simply stated, the Congress of the United States enacted a statute, and thereafter the Connecticut General Assembly enacted another statute. The United States asserts that the latter statute conflicts with the former and is, accordingly, pre-empted. The United States also asserts that, even if there were no Federal legislation, the Connecticut statute would work an unconstitutional interference with interstate commerce.
Where Federal and state statutes conflict, the Supremacy Clause of the United States Constitution, Art. VI, provides that the state statute must give way.[5] A long history of law has established beyond the slightest doubt that Congress has pre-eminent authority under the Commerce Clause of the Constitution, Art. I, § 8, to legislate where activities affecting interstate commerce are concerned, to pre-empt those state laws in conflict with congressional enactments, and to prohibit state regulations concerning activities having a substantial effect on interstate commerce even in the absence of any contradictory congressional enactments.[6]
*575 In general, the power of Congress to preempt state legislation affecting interstate commerce is sweeping. In the case before this court, it is likely that the Connecticut statute, even in the absence of any congressional pre-emption, might have had an unconstitutional impact on interstate commerce.
Section 411(c) of the STAA specifically provides that no state shall prohibit tandem trailers from its highways. Thus, the STAA reveals an explicit congressional intention to pre-empt competing state legislation. Section 2 of the Connecticut statute, which announces a ban on tandem trailers in the State, does precisely what Section 411(c) of the STAA provided a state could not do. Section 3 of the Connecticut statute, slated to come into play if enforcement of Section 2 is enjoined, imposes various restrictions and regulations on those who would drive tandem trailers on state highways. Thus, Section 3 burdens the activity that the STAA clearly seeks to protect.[7] Hence, Section 3 of the Connecticut statute also appears to be pre-empted.

III.
In defense of its statute, the State of Connecticut has launched an attack that is ingenious and thorough, yet ultimately unavailing. Throughout the State's case, the argument is made that tandem trailers ought to be banned, one way or another, from Connecticut's highways.[8] This court expresses no view on that question. It is not the function of this court in this case to second-guess a congressional determination.[9] Where Congress acts pursuant to its authority under the Constitution and elects to pursue a certain course of action, those who disagree with Congress ordinarily must pursue their cause through political debate *576 and action, not through litigation.[10] Nothing in the present case presents an occasion for deviation from these settled principles of American constitutional law.

A.
It does not advance Connecticut's cause to argue that the STAA was adopted without findings of fact or the hearing of testimony.[11] Even if true, it does not follow that this or any other court sits to consider whether, in passing a particular bill, Congress deliberated with due care and reflection. Nor does it help Connecticut to argue that Congress failed to demonstrate how legislation concerning tandem trailers affected interstate commerce: that trucking involves interstate commerce is virtually a self-evident proposition.[12]

B.
It is, of course, true that a court will not lightly assume that Congress meant to pre-empt state legislation.[13] In this case, however, the words of Congress in § 411(c) of the STAA are explicit. There can be no question that pre-emption of state statutes barring tandem trailers was exactly what Congress sought to effect.
The State argues that Congress failed to specify what effect on interstate commerce it sought to achieve or why a requirement such as that contained in the STAA would help promote that effect.[14] However, it is manifest that the STAA reflects a congressional interest in establishing uniform regulations governing the size, weight, and arrangements of trucks used in interstate commerce. In furtherance of that purpose, Congress adopted an approach neither irrational nor irrelevant. Nor, despite the State's argument, is it apparent that Congress need have considered other means of achieving its purposes.[15] Whether Congress chose wisely is not the issue before this court. Whether Congress made a choice that will ultimately prove self-defeating is not the issue before this court. To hold that Congress acted within its authority *577 under the Commerce Clause, all that this court need determine is that Congress acted with respect to an activity affecting interstate commerce and that the action it took was indeed reasonably related to the regulation of that commerce.[16]
The State's argument that Congress was without authority under the Commerce Clause to enact the STAA or to pre-empt competing state legislation is thus without force. From that argument, we turn to the State's contentions that the Fifth and Tenth Amendments to the Constitution bar a congressional enactment such as the STAA.

C.
The State has also asserted that the STAA must fall as a violation of Connecticut's rights under the Due Process Clause of the Fifth Amendment to the United States Constitution, which clause is commonly deemed to incorporate guarantees of equal protection of the laws.[17] It is doubtful that the State has the legal standing requisite to make this claim; but even if the claim is properly made, it cannot succeed. In a case such as this, due process is satisfied as long as Congress' action was not patently irrational. The face of the statute itself reveals a rational purpose, that of facilitating interstate trucking. Moreover, Connecticut's apparent argument that Congress impermissibly discriminated against drivers on Interstate highways (as against drivers on other federally-funded highways) must fail, because Congress could rationally distinguish between the two types of highways on the basis of the proportion of their costs funded by Federal contributions.[18]

D.
Throughout most of American constitutional history, the Tenth Amendment has been regarded as having little practical impact on Federal legislation. While the prevailing modern understanding of the Tenth Amendment may appear to have been reviewed afresh by the Supreme Court in National League of Cities v. Usery, 426 U.S. 833, 96 S.Ct. 2465, 49 L.Ed.2d 245 (1976), more recent decisions of the Court have defined with narrow precision the place of the Tenth Amendment in our Federal system of government. Hodel v. Virginia Surface Mining and Reclamation Association, Inc., 452 U.S. 264, 287-288, 101 S.Ct. 2352, 2366, 69 L.Ed.2d 1 (1981), set forth a rigorous test for the state asserting that Federal legislation violates the Tenth Amendment. Among other things, a state making such a claim must show that the challenged legislation poses a "wide-ranging and profound threat to the structure of State governance." EEOC v. Wyoming, ___ U.S. ___, ___, 103 S.Ct. 1054, 1062, 75 L.Ed.2d 18 (1983). Nothing in the record of this case or even remotely suggested by the State so much as hints that the STAA poses such a threat to "the structure of State governance" in Connecticut.
The State has argued that one form of interference worked by the STAA is that it undermines Connecticut's decision-making.[19] *578 That argument, however, merely restates the fact that the STAA is at odds with the Connecticut statute.
It may or may not be the case that, as a consequence of the STAA, the State will, in some areas, be required to expend more money than it might otherwise have chosen to on traffic safety. But such an argument is speculative. There is a world of difference between a Federal statute that requires a state to commit funds and a statute that may have the incidental effect of increasing state spending. Deplorable as the latter consequence may be, it cannot provide a basis for a state challenge to the constitutionality of a congressional statute.
Finally, § 411(c) of the STAA does not compel the State to adopt or enforce a Federal regulatory scheme.[20] Nowhere has Connecticut suggested what constitutes that scheme or how Connecticut believes itself required to implement it. Section 411(c) does require Connecticut to allow tandem trailers on certain highways. Connecticut's role is purely passive: far more affirmative enforcement is demanded of the states under the Federal statute imposing a 55-mile-per-hour speed limit on traffic using federally-funded highways.[21]
The State's concern with safety, however, merits a word of further discussion. With some misgivings about the relevance of the proposed evidence, this court permitted Connecticut to introduce testimony concerning the possible impact on highway safety of the STAA. See Ruling on Motion to Preclude (filed June 8, 1983), at 4-5. Having now heard that testimony, the court finds its initial doubts confirmed. Whether tandem trailers pose hazards for themselves or other drivers is a question for Congress to consider, and Congress is apparently now considering it.[22] It is not a question that this court is institutionally equipped or constitutionally empowered to decide.
An assertion that a Federal statute may have some deleterious effect upon the people of a state does not amount to an adequate claim that the Federal statute violates the Tenth Amendment. Principles of national sovereignty outweigh even those concerns that strike the public as particularly urgent; the alternative proposed by the State would require that Federal judges regularly substitute their judgment for that of legislative and executive officials at all levels of government.

E.
The last of the State's arguments is the assertion that, in promulgating a list of designated federally-funded highways in Connecticut, pursuant to § 411(e) of the STAA, the Secretary of Transportation violated *579 § 553(c) of the Administrative Procedure Act, 5 U.S.C. § 553(c), or other Federal law.[23] As originally presented in the State's Answer, that contention was put in the form of a statement that the STAA itself violated other Federal laws. But that, of course, is absurd: one Federal law cannot violate another Federal law. If two Federal laws are in irreconcilable conflict, the later one merely repeals the earlier. Perhaps recognizing that principle, the State now argues that, not the STAA, but the regulations published pursuant to it, violated other Federal laws.
This court need not consider whether the regulations at issue were in fact promulgated in violation of the Administrative Procedure Act or any other Federal law: indeed, even the question of the constitutionality of those regulations is not presented by this case.[24] The only issue presented to this court is that of whether enforcement of the Connecticut statute should be enjoined. That enforcement will be enjoined if the Connecticut statute is pre-empted by the STAA, which, in turn, must be the case unless the STAA is itself unconstitutional. Thus, it is only the legitimacy of the STAA that concerns us here. The legitimacy of regulations under the STAA is irrelevant, because the Connecticut statute has been attacked as inconsistent with the STAA itself and not as inconsistent with any regulations. Even if the regulations were unconstitutional, the Connecticut statute would still be pre-empted, not by the regulations, but by the STAA.

IV.
Ordinarily, an applicant for preliminary injunctive relief must show (1) irreparable injury and (2) either probable success on the merits or sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in favor of the party requesting a preliminary injunction.[25] In the case at bar, the court concludes without hesitation that the United States has shown that it will be irreparably injured by the continuing violation of the STAA, a Federal statute, that would result from failure to enjoin enforcement of the Connecticut statute; the United States has shown as well that interstate truckers would be harmed financially or through threat of arrest.[26] As the only questions that appear to be presented in this case seem, at present, to be legal ones, and as those questions have now been determined in favor of the United States, the likelihood that the United States will prevail on the merits is overwhelming.
*580 It is not necessarily true, however, that the court must reach even those conclusions. Where (as in this case) an ongoing violation of a Federal statute is threatened and that statute specifically authorizes injunctive relief, irreparable injury may be assumed.[27] Whether the injury may be assumed or must be demonstrated, however, makes little difference. The court finds this to be the clearest sort of case for issuance of preliminary injunctive relief.
Accordingly, the plaintiffs' motion is granted in all respects. A preliminary injunction shall enter forthwith.
It is so ordered.
NOTES
[1] See, e.g., The Hartford Courant, "Tough Tandem-Ban Fight Expected," June 1, 1983, p. A1, and The New Republic, "Crash Course," June 13, 1983, p. 9. For a compilation of some 170 articles and editorials from local and national newspapers on this subject, see Defendants' Appendix (filed June 6, 1983), Vol. I, Part IV.
[2] Section 411(c) of the STAA, 49 U.S.C. § 2311(c), provides:

No State shall prohibit commercial motor vehicle combinations consisting of a truck tractor and two trailing units on any segment of the National System of Interstate and Defense Highways, and those classes of qualifying Federal-aid Primary System highways as designated by the Secretary pursuant to subsection (e) of this section.
[3] Section 2 of the Connecticut statute explicitly bars tandem trailers from the State's highways. The legislative history of the Connecticut statute consistently reflects the intention of its supporters "to deal with the new federal mandate under the Surface Transportation Assistance Act of 1982," Tandem Truck Policy Statement by Rep. Christine Niedermeier and Sen. William DiBella, Co-Chairmen, Transportation Committee of the Connecticut General Assembly, March 14, 1983, Defendants' Appendix, Vol. I, Part I-A, at 1. Supporters of the Connecticut statute understood that it was designed to conflict with the Federal law and that a legal response from the United States could therefore be expected.

In introducing the bill, Senator DiBella noted that the General Assembly would express its dissatisfaction with the fact-finding procedures of the United States Congress. See Proceedings of General Assembly, Senate, March 31, 1983, Defendants' Appendix, Vol. I, Part I-B, at 24-25. Senator Morano then "congratulat[ed] the Transportation Committee [co-chaired by Senator DiBella] because they had the courage to defy the federal regulations," id. at 34. Senator Serrani, while supporting the legislation, expressed concern about its ability to survive a challenge in Federal court. Id. at 37. Senator Scott, advocating that the General Assembly send "a message to the U.S. Congress," urged: "Let's fly our flag. If the Federal Government doesn't like it, let them take us to court." Senator Scott also suggested that other states in the region might join Connecticut in its stance. Id. at 39-40. Finally, Senator Zinsser rose to discuss his concern about the likelihood of a ban on tandem trailers. Id. at 47.
Similar remarks were made in the House of Representatives. See Proceedings of General Assembly, House of Representatives, March 30, 1983, Defendants' Appendix, Vol. I, Part I-C. Thus, Rep. Wilber acknowledged, "[W]e are defying the federal mandate," id. at 179. Rep. Allen spoke of "defying the federal government with this bill," id. at 183. Interestingly, Rep. Farr, after expressing doubt that the Connecticut statute could survive a legal challenge under the Commerce Clause, moved to amend the bill to make it explicitly consistent with the Federal Surface Transportation Assistance Act of 1982. Id. at 206-208. The proposed amendment was defeated. Id. at 210.
[4] Section 3 of the Connecticut statute is applicable "[i]n the event that a court of competent jurisdiction enjoins the state from enforcing the provisions of [Section 2 of the statute]." The Tandem Truck Policy Statement of the Transportation Committee of the General Assembly, see note 3, supra, makes clear that Section 3 was designed as part of a general scheme "to exclude these menacing double-trucks from Connecticut's highways," id. at 6-7. In general, Section 3 sets up special requirements for permitting tandem trailers and licensing their drivers, imposes special fines for infractions committed by their drivers, and creates special restrictions on the weights, configurations, and places of operation of tandem trailers.
[5] The doctrine that a constitutionally enacted Federal law prevails over any competing state statute is grounded upon the mandate of our Constitution that "[t]his Constitution, and the Laws of the United States which shall be made in Pursuance thereof ... shall be the supreme Law of the Land, and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." Const., Art. VI.

The question before this court is not whether the Federal law on tandem trailers is less reasonable or less sound than the statute enacted by the General Assembly of Connecticut. The Federal law may well entail serious risks for the driving public in Connecticut. Nevertheless, for good or for ill, it is a law enacted by our national government on a subject over which its powers are clear and complete, and Federal judges are not commissioned for the purpose of deciding cases on the basis of their personal political preferences.
Where, as in this instance, a state statute is enacted for the explicit purpose of undermining or undoing the effects of a constitutionally enacted Federal statute, the court's duty is clear, regardless of any personal view on which of the two competing laws best serves the public interest.
The doctrine of Federal supremacy is rooted in the Constitution itself and is central to our concept of nationhood. Any questions about its place in our constitutional order need not be addressed in this courthouse; they were definitively resolved in another place, in another time: Appomattox Court House, Virginia, in 1865.
[6] It has long been recognized that "[t]he power of Congress over interstate commerce is plenary and complete in itself, may be exercised to its utmost extent, and acknowledges no limitations other than are prescribed in the Constitution," and that "no form of state activity can constitutionally thwart the regulatory power granted by the commerce clause to Congress," United States v. Wrightwood Dairy Co., 315 U.S. 110, 119, 62 S.Ct. 523, 526, 86 L.Ed. 726 (1942). There can be no question at this late date that Congress has authority to pre-empt state laws regulating activity affecting interstate commerce. Pacific Gas & Electric Co. v. State Energy Resources Conservation and Development Commission, ___ U.S. ___, ___, 103 S.Ct. 1713, 1720-22, 75 L.Ed.2d 752 (1983). Indeed, Congress may, under the Commerce Clause, prohibit all state regulation (and not merely such regulation as is inconsistent with Federal law) where an activity having a substantial effect on interstate commerce is involved. Hodel v. Virginia Surface Mining & Reclamation Association, 452 U.S. 264, 290, 101 S.Ct. 2352, 2367, 69 L.Ed.2d 1 (1981). It follows that, where Congress explicitly preempts state regulation in a field, all laws of the states purporting to regulate activity in that field are overridden under the Supremacy Clause. City of Burbank v. Lockheed Air Terminal, 411 U.S. 624, 633, 93 S.Ct. 1854, 1859, 36 L.Ed.2d 547 (1973). Defendants argue that Congress' power under the Commerce Clause does not reach activities whose effects upon interstate commerce are "indirect and remote," National Labor Relations Board v. Jones & Laughlin Steel Corp., 301 U.S. 1, 41, 57 S.Ct. 615, 626, 81 L.Ed. 893 (1937). That caveat is without significance in the present case, which involves the activity of commercial trucking on federally-funded highways. That such activity has an impact on interstate commerce can hardly be doubted. See, e.g., Raymond Motor Transportation v. Rice, 434 U.S. 429, 98 S.Ct. 787, 54 L.Ed.2d 664 (1978). That this is an area in which Congress may appropriately legislate is therefore obvious, and the Supreme Court has recognized that Congress may properly regulate truck lengths nationwide. See Kassel v. Consolidated Freightways Corp., 450 U.S. 662, 671, 101 S.Ct. 1309, 1316, 67 L.Ed.2d 580 (1981) (Powell, J., writing for himself, and White, Blackmun, and Stevens, JJ.) 450 U.S. at 691 (Rehnquist, J., dissenting on other grounds, writing for himself and Burger, Ch. J., and Stewart, J.).

In Kassel and Raymond Motor Transportation, state statutes purporting to regulate tandem trucks were held to impose a burden on interstate commerce in violation of the Commerce Clause, even in the absence of competing congressional legislation. Now that Congress has spoken, the burden on the states seeking to maintain their own regulations in this field is, of course, far greater.
[7] Taken one by one, the various provisions of § 3 of the Connecticut statute, see note 4, supra, might be justified as being either in accordance with Federal law or permissible as exercises of the State's "police power," see Goldblatt v. Hempstead, 369 U.S. 590, 82 S.Ct. 987, 8 L.Ed.2d 130 (1962). Considered in its totality, however, § 3 reveals a scheme of burdensome regulation that could only have the effect of achieving by an accumulation of petty irritations what § 2 of the Connecticut statute seeks to achieve through outright prohibition. This court cannot undertake the legislative task of separating the benign from the malignant portions of § 3. Section 3 must be taken as it comes, as a unified piece of legislation. It must also be understood in the context of the "springing use" designed for it and in relation to § 2, which it was designed to replace if necessary. In this light, § 3 can only be viewed as part of the State's general scheme "to exclude these menacing double-trucks from Connecticut's highways," see note 4, supra. As the United States has not sought to enjoin enforcement of all aspects of § 3, a more limited injunction may issue. But the foregoing principles are nevertheless applicable in this case.
[8] See, e.g., Connecticut Memorandum, 1-7, 32-34.
[9] A district court may not disturb Congress' rational findings by substituting its own. Hodel v. Virginia Surface Mining & Reclamation Association, supra, note 6, 452 U.S. at 277, 101 S.Ct. at 2360. It goes without saying that, in considering a statute, the court considers its constitutionality without presuming to pass upon its wisdom. Lochner v. New York, 198 U.S. 45, 75, 25 S.Ct. 539, 551, 49 L.Ed. 937 (1905) (Holmes, J., dissenting). See note 11, infra.
[10] To be sure, in the instant case defendants initially pursued their cause through legislation of their own. But they now seek to achieve in this court what they failed to gain in the Congress of the United Statesto wit, a guarantee that a state may ban tandem trailers from its highways. That is an argument that must be pressed, if at all, before Congress, not here.
[11] Nor is it apparent that defendants have accurately described the legislative history of the STAA or the materials available to Congress in debating the STAA. In fact, the Senate Committee on Commerce, Science, and Transportation did hold hearings and receive testimony on the section of the STAA at issue in this case. See Hearing Before the Committee on Commerce, Science, and Transportation of the United States Senate on S. 3044, Surface Transportation Act of 1982, Title IVHighway Safety (1983).

The State of Connecticut has repeatedly questioned the motivations and method of operation of the legislators who voted in favor of the Federal statute at issue here. See, e.g., Defendants' Response Regarding Legislative History (filed June 10, 1983). From their earliest days, the Federal courts have found such arguments irrelevant where the constitutionality of statutes is questioned. In the words of Chief Justice John Marshall, "if the act be clothed with all the requisite forms of a law, a court ... cannot sustain a suit ... founded on the allegation that the act is a nullity, in consequence of the impure motives which influenced certain members of the legislature which passed the law." Fletcher v. Peck, 6 Cranch (10 U.S.) 48, 73, 3 L.Ed. 162 (1810).
[12] See Kassel v. Consolidated Freightways Corp., supra, note 6, and Raymond Motor Transportation v. Rice, supra, note 6.
[13] Jones v. Rath Packing Co., 430 U.S. 519, 525, 97 S.Ct. 1305, 1309, 51 L.Ed.2d 604 (1977).
[14] Connecticut Memorandum, 14-15.
[15] Heart of Atlanta Motel v. United States, 379 U.S. 241, 261, 85 S.Ct. 348, 359, 13 L.Ed.2d 258 (1964). For this court's purposes, the only inquiry that need be made is whether the course of action taken by Congress had rational support. Katzenbach v. McClung, 379 U.S. 294, 303-304, 85 S.Ct. 377, 383, 13 L.Ed.2d 290 (1964). That is as far as the inquiry goes. That other courses of action, equally plausible, perhaps even more sensible in the eyes of some, might have been chosen is a matter of no significance here. "This court will certainly not substitute its judgment for that of Congress in such a matter unless the relation of the subject to interstate commerce and its effect upon it are clearly non-existent," Stafford v. Wallace, 258 U.S. 495, 521, 42 S.Ct. 397, 403, 66 L.Ed. 735 (1922).
[16] Heart of Atlanta Motel v. United States, supra, note 15, 379 U.S. at 258-259, 262, 85 S.Ct. at 358, 360 (1964).
[17] Bolling v. Sharpe, 347 U.S. 497, 499, 74 S.Ct. 693, 694, 98 S.Ct. 884 (1954).
[18] The proposition that a state has standing to assert its own putative claims against the Federal Government under the Fifth Amendment or, as parens patriae, the claims of its citizens in the same fashion is both essential to defendants' argument, see Connecticut Memorandum, 37-38, and completely undermined by South Carolina v. Katzenbach, 383 U.S. 301, 323-324, 86 S.Ct. 803, 815-16, 15 L.Ed.2d 769 (1966). Defendants concede that only a rational basis for the STAA need be shown for the statute to be upheld under the Fifth Amendment. As the accompanying text suggests, such a rational basis can easily be found. But it is also worth noting that Connecticut's attempt to assert that the STAA discriminates against Interstate System drivers (as against drivers on Primary System and other highways receiving Federal funds) must also fail because of the utter lack of any showing that the two groups of drivers are, in fact, different individuals. It seems plausible that the people who drive Connecticut's Interstate highways are also the people who drive the State's other federally-funded roads. If that is so, it would be impossible for the STAA to discriminate against the former and in favor of the latter, no matter how much Interstate System traffic were penalized.
[19] Connecticut Memorandum, 33-34.
[20] It is obvious from the language of § 411(c) of the STAA, see note 2, supra, that it imposes no regulatory scheme on the State. Thus, the State's argument that such a scheme has been imposed upon it turns out to depend on § 411(a) and (d), not § 411(c). Connecticut Memorandum, 16. Connecticut has not, however, even hinted why the invalidation of subsections (a) and (d) under the Tenth Amendment ought to result in the upholding of the Connecticut statute against a pre-emption challenge involving subsection (c). Even if all that the State says on this point were persuasive, this court would still be compelled to find the Connecticut statute pre-empted under the Supremacy Clause.
[21] It has been suggested that the 55-mile-perhour limitation is in fact paradigmatic of the sort of Federal intervention that does not run afoul of the Tenth Amendment or the Commerce Clause. See, e.g., District of Columbia v. Train, 521 F.2d 971, 993 n. 26 (D.C.Cir.1975). Of course, a speed limitation requires a state to commit its resources and set priorities that it might not otherwise have elected, and the limitation depends entirely upon the states for enforcement.
[22] See 49 U.S.C. § 2315, which provides that the Secretary, within 18 months after the passage of the STAA on January 6, 1983, must submit a detailed report to Congress on the "potential benefits and costs" of tandems to commercial interests and to the general public, including an analysis of the safety record of such longer combination commercial vehicles. This provision is similar to one contained in the STAA's predecessor, § 161 of the Surface Transportation Assistance Act of 1978. Pursuant to the 1978 Act, the Secretary transmitted to Congress in August 1981 a final report entitled An Investigation of Truck Size and Weight Limits, which contained a detailed analysis of the costs and benefits of tandems, including their economic and safety consequences.
[23] Section 553(c) of the Administrative Procedure Act (the "APA"), 5 U.S.C. § 553(c), requires that, before certain regulations may be adopted, notice of their proposal must be published and interested parties must have an opportunity to comment thereon. The State contends that, in promulgating regulations pursuant to the STAA, the Secretary violated the APA. Connecticut Memorandum, 57-64. The State also argues that promulgation of the regulations did not conform to the requirement of the National Environmental Policy Act, 42 U.S.C. § 4332(2)(C), that certain regulations be preceded by an environmental impact statement, and the requirement of Executive Order No. 12291, 46 Fed.Reg. 13192 (1981), that major rules not be made without a regulatory impact analysis. Connecticut Memorandum, 47-56. While the State has now largely corrected its earlier position that the STAA itself violated earlier Federal statutes, not all of the corrections are coherent; see, e.g., Connecticut Memorandum, 47 ("[t]he federal government in urging adoption of the STAA ... ignored several crucial administrative procedures").
[24] In Georgia Department of Transportation v. Dole, 561 F.Supp. 1024 (N.D.Ga.1983), the court found that regulations promulgated by the Secretary purportedly pursuant to the STAA (and similar to the regulations at issue here) exceeded statutory authority and violated the APA. But the instant case is not comparable. Here the State has chosen not to sue the Secretary of Transportation, electing instead to fashion a home-made injunction in the form of a state statute. It is beyond the authority of this court simply to transmute the Connecticut statute into a Federal injunction.

In any event, the question of whether the State might be entitled to relief from the regulations promulgated by the Secretary is not relevant to the issues presented in this case, which concerns the relation of the Federal and State statutes, without reference to any regulations.
[25] Sperry International Trade, Inc. v. Government of Israel, 670 F.2d 8, 11 (2d Cir.1982).
[26] See note 7, supra. See also Court Exhibit 1, a photographic article published in The Hartford Courant, June 8, 1983, p. 1, depicting signs erected by the State of Connecticut on June 7, 1983. The signs, apparently posted on interstate highways, notify truckers of the following: "Tandem Trailers Prohibited in Connecticut" under authority of Public Act 83-21. The Hartford Courant, "State Can Present Safety Testimony in Tandem Suit," June 9, 1983, p. C4.

A number of other states are apparently watching the Connecticut litigation closely, and they are expected to follow Connecticut's total ban on tandems if the Connecticut ban is upheld. See id. It appears from the legislative record of the Connecticut statute that the encouragement of just such a multistate ban on tandem trailers was contemplated and favored by sponsors of the Connecticut legislation. See note 3, supra.
[27] Where the United States sues to enjoin an ongoing violation of a Federal statute that contains a provision specifically authorizing such a suit, the Supreme Court has held the balancing of equities normally required for issuance of a preliminary injunction need not be undertaken. United States v. City and County of San Francisco, 310 U.S. 16, 30-31, 60 S.Ct. 749, 756-57, 84 L.Ed. 1050 (1940). The STAA contains that sort of provision in § 413, 49 U.S.C. § 2313. Passage of a Federal statute like the STAA is, "in a sense, an implied finding that violations will harm the public and ought, if necessary, be restrained." United States v. Diapulse Corp. of America, 457 F.2d 25, 28 (2d Cir.1972). Thus, the precise and immediate way in which violation of the law will result in public harm need not be shown. Id.