## NEW HAMPSHIRE MOTOR TRANSPORT ASSOCIATION, et al.

v.

## TOWN OF PLAISTOW.

No. c–93–149–L.

United States District Court,
D. New Hampshire.

Oct. 25, 1993.

Daniel T. Chabot, William J. Barron, La-
Flamme, Migliori, Barron & Chabot, Haver-
hill, MA, for plaintiff.

Andrew D. Dunn, Devine, Millimet &
Branch, PA, Manchester, NH, Sumner F.
Kalman, Sumner F. Kalman, P.C., Plaistow,
NH, for defendant Town of Plaistow.

## ORDER ON MOTION TO DISMISS

LOUGHLIN, Senior District Judge.

### Procedural History

On March 26, 1993, plaintiffs, New Hampshire Motor Transport Association, et al. ("NHMTA"), filed a complaint against the defendant, the Town of Plaistow, New Hampshire (Plaistow). NHMTA and various interested parties allege that their federal constitutional rights have and continue to be violated by enforcement of a local ordinance which, as a result of a New Hampshire Superior Court permanent injunction, limits the access to its Newton, N.H. terminal during certain delineated time periods. Specifically, NHMTA alleges that Plaistow Zoning Ordinance § 1.4 directly violates 49 U.S.C.App. § 2301 et seq., entitled the Surface Transportation Assistance Act (count I); 49 U.S.C.App. § 1801 et seq., entitled the Hazardous Materials Transportation Act (count II); 42 U.S.C. § 4901 et seq., entitled the Federal Noise Control Act (count III); and the Commerce Clause of the United States Constitution (count IV). As a result of these alleged violations, NHMTA argues that § 1.4 is preempted pursuant to the Supremacy Clause of the United States Constitution and is therefore unenforceable as applied to its operations (count V). In NHMTA's complaint, declaratory relief and damages are sought.

On April 15, 1993, Plaistow answered NHMTA's complaint and specifically asserted that the principles of collateral estoppel, res judicata, lack of standing, and failure to state a cause of action with regard to the preemption claims entitle it to a dismissal. Plaistow then filed a Motion to Dismiss on August 25, 1993 with accompanying memorandum alleging only that, under Fed.R.Civ. Pro. 12(b)(6), the preemption claims of NHMTA should be dismissed for failure to state a claim upon which relief can be granted.

NHMTA filed its Objection to Defendant's Motion to Dismiss with accompanying memorandum on September 7, 1993. Plaistow followed this up with a Reply to Plaintiff's Objection to the Defendant's Motion to Dismiss filed on September 14, 1993. The Court

will now address only those issues raised in the Motion to Dismiss and corresponding pleadings leaving other issues not asserted in such motion to be decided at trial.

**Factual Background**

In 1985, Arnold Pevna, as trustee of Olympiad Realty Trust ("Olympiad"), entered into an agreement to purchase a certain parcel of land located partially in Newton, N.H. and partially in Plaistow, N.H. Olympiad's plans were to build a trucking terminal to be located entirely in Newton with access via a private and public way each located in Plaistow. In 1986, Olympiad contacted the Plaistow Planning Board inquiring into the necessity of site plan approval over the project pursuant to NH RSA 674:43 and NH RSA 674:4. In 1987, the Planning Board allegedly ruled that no public hearing was required for site plan approval since the terminal was to be in Newton with access through a private drive in Plaistow. Plaistow argues that any decision made by the Planning Board was based on false representations by Olympiad regarding the nature and hours of operation of the terminal.

Olympiad proceeded to acquire the land and construct the terminal at a cost in excess of $1,000,000.00. Olympiad then leased the terminal to Atlas Motor Express, Inc. ("Atlas"), which began operations at the terminal in 1988. Atlas' ordinary business practices require that various interstate motor carriers traveling throughout the United States utilize its Newton, N.H. terminal. The terminal is located less than one mile from New Hampshire Route 125 and Interstate 495, each of which is part of the Federal Highway System.

On October 7, 1988, Plaistow served upon Atlas and Olympiad a notice to cease and desist its operations which were alleged to be in violation of Plaistow Zoning Ordinance § 1.4. In 1989, the Rockingham County Superior Court issued a permanent injunction against Atlas and Olympiad enforcing ordinance § 1.4 by limiting the hours of operation of the terminal to the following:

Effective until March 20, 1993:

(a) 4:45 a.m. to 6:00 a.m.—five tractor trailer units may enter or leave;

(b) 6:00 a.m. to 9:00 p.m.—unrestricted;

(c) 9:00 p.m. to 11:00 p.m.—three tractor trailer units may enter or leave;

(d) 11:00 p.m. to 4:45 a.m.—no tractor trailer units may enter or leave.

Effective March 20, 1993:

(a) 5:00 a.m. to 6:00 a.m.—three tractor trailer units may enter or leave;

(b) 6:00 a.m. to 9:00 p.m.—unrestricted;

(c) 9:00 p.m. to 11:00 p.m. two tractor trailer units may enter or leave;

(d) 11:00 p.m. to 5:00 a.m. no tractor trailer units may enter or leave.

Olympiad and Atlas have caused a gate to be erected to prevent ingress and egress at prohibited times in an attempt to regulate compliance with the permanent injunction. The plaintiffs allege that nighttime operations are essential to their operations and that they are at a disadvantaged position in relation to their competitors who operate without similar restrictions. On the other hand, neighbors have periodically complained, and Plaistow strongly believes it has a right to enforce a local zoning or nuisance ordinance to protect these interests and that such an ordinance is not preempted by federal law.

**Discussion**

*I. Fed.R.Civ.P. 12(b)(6)*

A motion to dismiss under Fed.R.Civ.P. 12(b)(6) is one of limited inquiry, focusing not on "whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). Accordingly, the court must take the factual averments contained in the complaint as true, "indulging every reasonable inference helpful to the plaintiff's cause." *Garita Hotel Ltd. Partnership v. Ponce Federal Bank, F.S.B.,* 958 F.2d 15, 17 (1st Cir.1992); *see also Dartmouth Review v. Dartmouth College,* 889 F.2d 13, 16 (1st Cir.1989). In the end, the court may grant a motion to dismiss under Rule 12(b)(6) " 'only if it clearly appears, according to the facts alleged, that the plaintiff cannot recover on any viable theory.' " *Garita,* 958 F.2d at 17 (quoting *Correa–Mar-*

*tinez v. Arrillaga–Belendez*, 903 F.2d 49, 52 (1st Cir.1990)).

## II. *Federal Preemption*

In 1824, the United States Supreme Court, analyzing the Supremacy Clause,[1] declared that state laws which "interfere with, or are contrary to, the laws of Congress, made in pursuance of the constitution" are preempted and therefore invalid. *Gibbons v. Ogden*, 22 U.S. (9 Wheat.) 1, 211, 6 L.Ed. 23 (1824). The First Circuit Court of Appeals has recently stated that "[t]his verity remains firmly embedded in our modern jurisprudence." *Greenwood Trust Co. v. Massachusetts*, 971 F.2d 818, 822 (1st Cir.1992) (citing *Wisconsin Pub. Intervenor v. Mortier*, —— U.S. ——, ——, 111 S.Ct. 2476, 2481, 115 L.Ed.2d 532 (1991)), *cert. denied* —— U.S. ——, 113 S.Ct. 974, 122 L.Ed.2d 129 (1993).

The Supreme Court draws a distinction between express and implied preemption. *Id.* "Express preemption occurs 'when Congress has "unmistakably ... ordained" that its enactments alone are to regulate a [subject, and] state laws regulating that [subject] must fall.' " *Id.* (quoting *Jones v. Rath Packing Co.*, 430 U.S. 519, 525, 97 S.Ct. 1305, 1309, 51 L.Ed.2d 604 (1977) (citation omitted)). When a court considers an issue of express preemption, "the only remaining question is whether a particular state statute intrudes into the federal pale." *Id.* (citing *Schneidewind v. ANR Pipeline Co.*, 485 U.S. 293, 299, 108 S.Ct. 1145, 1150, 99 L.Ed.2d 316 (1988); *Cable Television Ass'n v. Finneran*, 954 F.2d 91, 98 (2d Cir.1992)).

In contrast, "[i]mplied preemption comes in a wide variety of sizes and shapes." A court need not consider the various forms of implied preemption, however, when it is clear that the principles of express preemption apply. *See King v. Collagen Corp.*, 983 F.2d 1130 (1st Cir.1993) (express preemption provisions foreclose inquiry into implied preemption), *cert. denied* —— U.S. ——, 114 S.Ct. 84, 126 L.Ed.2d 52 (1993). In any event, any

preemption analysis begins with the question of whether Congress intended federal law to preempt state law. *Id.* "To discern Congress' intent, we examine the explicit statutory language and the structure and purpose of the statute." *Ingersoll–Rand Co. v. McClendon*, 498 U.S. 133, 137–38, 111 S.Ct. 478, 482, 112 L.Ed.2d 474 (1990) (quoting *Allis–Chalmers Corp. v. Lueck*, 471 U.S. 202, 208, 105 S.Ct. 1904, 1909, 85 L.Ed.2d 206 (1985)) (internal citations omitted). Next, a preemption analysis must recognize that "the historic police powers of the States [are] not to be superseded by [a] federal act unless that was the clear and manifest purpose of Congress." *Id.* (citation omitted). Courts must further recognize that "the authority to displace a sovereign state's law is 'an extraordinary power .... that we must assume Congress does not exercise lightly.' " *Id.* (quoting *Gregory v. Ashcroft*, —— U.S. ——, ——, 111 S.Ct. 2395, 2400, 115 L.Ed.2d 410 (1991)). "Even federal statutes that contain express preemption clauses must be viewed through the prism of this assumption." *Id.* (citing *Cipollone v. Liggett Group, Inc.*, —— U.S. ——, —— – ——, 112 S.Ct. 2608, 2615–19, 120 L.Ed.2d 407 (1992) (plurality opinion), —— U.S. at ——, 112 S.Ct. at 2625 (Blackmun, J., concurring in part and dissenting in part)). With that overview of preemption law, the Court will now directly address the issue of preemption of § 1.4 by the federal statutes set forth by NHMTA.

## A. Preemption by the Surface Transportation Assistance Act

The Surface Transportation Assistance Act ("STAA") contains an express preemption provision in § 2312 which provides, in relevant part:

(a) No State may enact or enforce any law denying reasonable access to commercial motor vehicles subject to this chapter between (1) the Interstate and Defense Highway System ... and (2) terminals, facilities for food, fuel, repairs, and rest, and points

---

1. The Supremacy Clause provides:
 This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United

States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding. **U.S. Const. art. VI, cl. 2.**

of loading and unloading for household goods carriers, motor carrier of passengers, and for any truck tractor-semitrailer combination in which the semitrailer has a length not to exceed 28½ feet and which generally operates as part of a vehicle combination described in section 2311(c) of this title.

(b) Nothing in this section shall be construed as preventing any state or local government from imposing any reasonable restriction, based on safety considerations, on any truck tractor-semitrailer combination in which the semitrailer has a length not to exceed 28½ feet and which operates as part of a vehicle combination described in section 2311(c) of this title.

49 U.S.C.App. § 2312(a) & (b) (supp. 1993).

Plaistow Zoning Ordinance § 1.4 states that:

Any use that may be obnoxious or injurious by reason of the production or emission of odors, dust, smoke, refuse matter, fumes, noises, vibration or other similar conditions, or that are dangerous to the comfort, peace, enjoyment, health or safety of the community whether it contributes to its disturbance or annoyance are prohibited in all districts.

Plaistow Zoning Ordinance, § 1.4.

■ On the face of these enactments, it is pellucidly clear that no direct conflict exists. The Plaistow ordinance, the town argues, is not of the type that Congress intended to preempt in enacting the STAA. Plaistow further argues that no preemption exists in this case because the town ordinance is not designed to regulate trucking activities, but rather acts as an "incidental denial of nighttime access." (*See Reply to Plaintiff's Objection to the Defendant's Motion to Dismiss*, at 3). Plaistow fails to recognize, however, that when deciding an express preemption case, the Court is charged with the duty to discover any conflict between the statutes, not as written on their face, but as interpreted and applied in that case. *Jones v. Rath Packing*, 430 U.S. 519, 526, 97 S.Ct. 1305, 1310, 51 L.Ed.2d 604 (1977) (courts must consider the relationship between state and federal laws as interpreted and applied, not merely as written); *Great Western United Corp. v.*

*Kidwell*, 577 F.2d 1256, 1274–75 (5th Cir. 1978) (preemption analysis to be done by considering the application of the state law to the circumstances of the particular case), *rev'd on other grounds* 443 U.S. 173, 99 S.Ct. 2710, 61 L.Ed.2d 464 (1979); *New York State Motor Truck Ass'n v. New York*, 654 F.Supp. 1521, 1524–25 (S.D.N.Y.), *aff'd* 833 F.2d 430 (2nd Cir.1987) (STAA preemption provisions preclude any "scheme of burdensome regulation that could only have the effect of achieving by an accumulation of petty irritations what [a state cannot] achieve through outright prohibition") (quoting *United States v. Connecticut*, 566 F.Supp. 571, 577 n. 7 (D.Conn.), *aff'd* 742 F.2d 1443 (2d Cir.1983), *aff'd* 465 U.S. 1014, 104 S.Ct. 1263, 79 L.Ed.2d 670 (1984).

As explained, "[t]he proper analysis for questions of federal preemption is well settled. Where Congress has clearly expressed its intention to preempt conflicting state law, the only inquiry is whether the state law in question actually conflicts with federal law." *A.B.F. Freight System, Inc. v. Suthard*, 681 F.Supp. 334 (E.D.Va.1988). "In the STAA, Congress expressly intended to preempt all inconsistent state regulation: 'No State may enact or enforce any law denying reasonable access to commercial motor vehicles subject to this chapter ...'" Consequently, the only question to be resolved with regard to this issue is whether Plaistow Zoning Ordinance § 1.4, "as interpreted and applied", conflicts with the provisions of the STAA. If the two enactments conflict, then the local ordinance is preempted. If no conflict exists, however, between the two enactments, then they may exist independently of each other without interference from this court.

The gravamen of this case is whether or not the Plaistow ordinance, as applied and interpreted, violates a simple but uncertain concept set forth in the STAA: "Reasonable Access". The Plaistow ordinance has been interpreted and applied by the superior court in such a way as to limit the nighttime operations of the Newton terminal. The question remains, however, whether or not "reasonable access" has been denied.

This Court interprets the STAA as follows: If a state or local municipality enacts a statute or ordinance which denies commercial motor vehicles subject to the Act "reasonable access" to their terminals, then it is in violation of federal law. *See* 49 U.S.C.App. § 2312(a). A limited exception to this general rule exists in § 2312(b) which allows reasonable restrictions to be placed on "pup" commercial vehicles if the sole objective of the enactment is safety. *See A.B.F. Freight System, Inc.,* 681 F.Supp. at 334 (discussing the limited exception to the "reasonable access" guarantee for "pups" based on safety concerns). The question of the purpose of the ordinance need not be met, however, if the general rule is complied with, that is, if "reasonable access" is maintained. This Court notes that based on the record, no showing of safety objectives have been made by Plaistow in enacting the ordinance. Therefore, assuming *arguendo* that "reasonable access" has been denied by applying the ordinance, the exception for "pup" trailers will not be met and the principles of federal preemption will apply.

It all comes down to that simple but uncertain concept: Is "reasonable access" being denied to NHMTA. The Court notes that the term "reasonable" is a factual question which requires a consideration of the circumstances involved. The Court further notes that the pleadings are devoid of information surrounding the reasonableness of the nighttime restrictions considering the parties interests and industry standards. While the Court is mindful of the town's interests here, it is concerned about "the particular difficulty that long distance haulers would face trying to coordinate their delivery schedules to avoid the prohibited hours." *New York State Motor Truck Ass'n,* 654 F.Supp. at 1536.

Since there exists, at the very least, an arguable theory that the town of Plaistow went beyond its permissible police power and denied "reasonable access", the authority surrounding rule 12(b)(6) requires that the plaintiff be allowed to present evidence to support its claims. *See Garita,* 958 F.2d at 17 (plaintiff entitled to offer evidence to support any viable theory); *New York State*

*Motor Truck Ass'n,* 654 F.Supp. at 1534–35 (state regulation restricting hours of use of tandem trucks preempted by STAA); *United States v. Florida,* 585 F.Supp. 807 (N.D.Fla. 1984) (Florida's time of day restrictions held invalid under Supremacy Clause since in conflict with STAA); *cf. Pirolo v. Clearwater,* 711 F.2d 1006 (11th Cir.1983) (municipal airport ordinance prohibiting night operations and prescribing air traffic patterns preempted by federal regulations and thus in violation of Supremacy Clause).

In the event that the commercial motor vehicles involved are shown to be covered by the STAA and a denial of "reasonable access" is established, this Court would then hold that Plaistow Zoning Ordinance § 1.4 violates § 2312(a) of the STAA and is therefore preempted and unenforceable as applied. On the other hand, if a denial of "reasonable access" is not established, the Court would hold that no violation exists and the local ordinance would therefore continue to be enforced against NHMTA. Accordingly, Plaistow's Motion to Dismiss as to Count I must be denied so that this issue of possible preemption may be resolved.

B. Preemption by the Hazardous Material Transportation Act

The Hazardous Material Transportation Act ("HMTA") contains an express preemption provision in § 1811 which provides in pertinent part that:

> Except as provided in subsection (d) ... an requirement of a State or political subdivision thereof or Indian tribe is preempted if—(1) compliance with both the State or political subdivision or Indian tribe requirement and an requirement of this title or of a regulation issued under this title is not possible, [or] (2) the State or political subdivision or Indian tribe requirement as applied or enforced creates an obstacle to the accomplishment and execution of this title or the regulations issued under this title ...

49 U.S.C.App. § 1811(a)(1), (2) (supp. 1993).

The HMTA further provides that "[t]he Secretary [of Transportation] shall issue regulations for the safe transportation of hazard-

ous materials in intrastate, interstate, and foreign commerce.... The regulation issued under this section shall govern any aspect of hazardous material transportation safety which the Secretary deems necessary or appropriate." 49 U.S.C.App. § 1804(a)(1). Pursuant to this authorization, the Secretary issued 49 C.F.R. § 177 entitled "Carriage by public highway". The purpose of these regulations is to "prescribe requirements ... that are applicable to the acceptance and transportation of hazardous materials by private, common or contract carriers by motor vehicle." 49 C.F.R. § 177.800(a). Under § 177.-853(a) entitled "Transportation and delivery of shipments", there may be "[n]o unnecessary delay in movement of shipments.... All shipments of hazardous material shall be transported without unnecessary delay, from and including the time of commencement of the loading of the cargo until its final discharge at destination." 49 C.F.R. § 177.-853(a).

 Although, as Plaistow argues, the clear language of this regulation appears to be aimed at the carrier and not the state or town, the language of § 1811(a) of the HMTA makes it clear that a state or town may not pass an ordinance which "as applied or in force create[s] an obstacle to the accomplishment of ... the regulations issued under this chapter". 49 U.S.C.App. § 1811(a)(2). Since the application of Plaistow Zoning Ordinance § 1.4, as applied and in force, may be creating an obstacle by causing "unnecessary delay" to the transportation of hazardous materials, the possibility exists that a violation of 49 U.S.C.App. § 1811(a) and 49 C.F.R. § 177.853 has occurred, which as explained under the STAA preemption analysis (*supra*), would result in federal preemption by the HMTA. *See National Tank Truck Carriers, Inc. v. Burke*, 535 F.Supp. 509 (D.R.I.1982), *aff'd* 698 F.2d 559 (1st Cir.1983) (state regulations which prohibit transportation of hazardous substances during rush hours could cause unnecessary delays in conflict with one purpose of HMTA and are therefore preempted); *Union P.R. Co. v. Las Vegas*, 747 F.Supp. 1402 (D.Nev.1989) (city ordinance relating to transportation of hazardous materials preempted by HMTA since

effect of ordinance is to impermissibly delay or virtually stop delivery).

Plaistow argues that preemption is inapplicable because a local zoning or nuisance ordinance is involved as opposed to a regulatory scheme aimed specifically at hazardous waste transportation. The express language of the HMTA itself, however, states that *any* requirement of a local town is preempted if it interferes with the Act as applied and enforced. *See* 49 U.S.C.App. § 1811(a) (emphasis added). Although Plaistow claims otherwise, there is authority standing for the proposition that local nuisance or zoning ordinances not directly related to the regulation of hazardous materials may nonetheless be preempted by HMTA if it violates it as applied. In *Consolidated Rail Corp. v. Dover*, 450 F.Supp. 966 (D.Del.1978), the City of Dover, Delaware argued that the transporting of hazardous materials constituted a common law public nuisance violating, "the comfort, repose, health, peace and safety" of the residents. *Id.* at 972 n. 8. Holding that another federal statute preempted this claim as applied, the court stated "[w]hat Dover may not do directly through enforcement of [an] ordinance, it may not do indirectly by means of a common law nuisance claim." *Id.* at 972. Similarly, this Court believes that what Plaistow cannot do directly by passing hazardous waste regulations, it cannot do indirectly by passing a nuisance ordinance. As the court in *Consolidated Rail* stated "it would be incongruous for the court to hold otherwise". *Id.*

The *Consolidated Rail* court went on to consider whether a town's common law public nuisance cause of action constituted a "requirement" under § 1811(a) of the HMTA. *Id.* at 973–74. Although the court disposed of the HMTA preemption issue on other grounds, its consideration of a nuisance cause of action as a possible "requirement" of a town under the HMTA strongly implies that a nuisance ordinance would clearly be a "requirement" of a town. *Id.* This Court is convinced that, in light of these authorities looking not at the face of the enactments but whether a conflict exists as applied, a possibility of preemption under the HMTA exists in the instant case.

Consequently, since a viable theory exist as to preemption by the HMTA, NHMTA will be allowed to offer proof, specifically that the transportation of waste covered by the HMTA is involved and that "unnecessary delay" has resulted through the enforcement of the local ordinances. If these facts are established, a violation of § 1811(a) will be established and, accordingly, the local ordinance will be preempted. Plaistow's motion to dismiss count II is therefore denied.

## C. Preemption by the Noise Control Act

The Noise Control Act ("NCA") contains an express preemption provisions in § 4917(c) which provides in pertinent part as follows:

(1) [N]o State or political subdivision thereof may adopt or enforce any standard applicable to the same operation of such motor carrier, unless such standard is identical to a standard applicable to noise emissions resulting from such operation prescribed by any regulation under this section.

(2) Nothing in this section shall diminish or enhance the rights of any State or political subdivision thereof to establish and enforce standards or controls on levels of environmental noise, or to control, license, regulate, or restrict the use, operation, or movement of any product if the ... Secretary of Transportation determines that such standard, control, license, regulation, or restriction is necessitated by special local conditions and is not in conflict with regulations promulgated under this section.

42 U.S.C. § 4917(c)(1) & (2) (1989).

■ Although the above quoted provisions evidence an express preemption clause, it is interpreted, based on the plain reading of the NCA, as well as the legislative history thereof, very narrowly. *See Baltimore & O.R. Co. v. Oberly*, 837 F.2d 108 (3rd Cir.1988). In considering the above preemption language, this Court would be remiss if it didn't also consider § 4901(a)(3) entitled "congressional findings and statement of policies" which states that "primary responsibility for control of noise rests with State and local governments...." 42 U.S.C. § 4901(a)(3).

In an apposite Third Circuit case, *Baltimore and O.R. Co. v. Oberly*, 837 F.2d 108 (3rd Cir.1988), the court considered whether a Delaware noise control statute as applied to a railroad company was preempted by the NCA. The court ultimately declined to find preemption holding that the NCA is to be interpreted narrowly and that states and local municipalities are to be given deference in passing noise related regulations. *Id.* at 114–15. In doing so, the court illustrated its point by stating that "[w]e believe that the plain language of the preemption section justifies a narrow interpretation of its effects ... [the preemption section] concerns preemption in the context of *specific* federal noise regulations ... [it] is not a global preemption provision.... it in no way suggests that Congress meant for the adoption of any federal noise regulation to bar or displace every state effort to regulate the noise emission of interstate ... carriers." *Id.* at 113–14.

■ While these statements went to the preemption provision of § 4916 regarding railroad noise emissions, the Court deems the same analysis apposite to the instant situation considering that the language of § 4916 is practically identical to that of § 4917 regarding motor carrier noise emissions. In light of the express policy statement of Congress in § 4901 to give great latitude to the states and local municipalities in this area and the fact that no violation on the face of the NCA occurs through the application of the local ordnance, this court believes that congressional intent requires it to exclude the possibility of federal preemption.

The fundamental difference between possible preemption by the STAA and the HMTA and a lack of preemption by the NCA is congressional intent. It is evident to this court, based on a plain reading of the respective statutes, case law, and legislative histories, that under the STAA and HMTA an application of the local ordinance may constitute a violation of federal law on the face of the statutes in interest. Therefore, in those two cases, the express preemption provisions enacted by Congress must control and feder-

al preemption may apply. This is the case because Congress intended that these federal statutes be fully complied with by State and local governments. Under the NCA, however, no facial violation of the statutory language exists and in addition, Congress clearly enunciates a greater latitude to be afforded states and local municipalities in the area of noise regulation. Therefore, under the NCA's narrowly interpreted preemption clause, as opposed to the broadly interpreted preemption clauses in the STAA and HMTA, the strong police power of the state controls and Plaistow's local ordinance will not be invalidated, at least as a result of the NCA.

Consequently, since this Court finds, even in the light most favorable to NHMTA, that the NCA does not preempt Plaistow Zoning Ordinance § 1.4 and that no violation of the NCA exists as the ordinance is applied, Count III of NHMTA's complaint is hereby dismissed.

### III. The Commerce Clause

■ As explained above, where a State or municipality regulates interstate commerce in a way inconsistent with Congress, the state or municipal regulation is preempted. Where no such conflict exists, however, nothing in the Commerce Clause [2] explicitly prohibits the State or municipality from permissibly regulating interstate commerce. *See Hyde Park Partners, L.P. v. Connolly,* 839 F.2d 837, 843 (1st Cir.1988) (discussing state regulations and the Commerce Clause). Nevertheless, the Supreme Court has established the 'dormant Commerce Clause,' under which the states are barred from regulating interstate commerce in a manner which significantly interferes with the national economy. *Id.* In doing so, the Supreme Court has distinguished between two effects state or local regulations have on interstate commerce, applying a different standard to each: (1) an incidental burden, and (2) an affirmative discrimination. *See Maine v. Taylor,* 477 U.S. 131, 138, 106 S.Ct. 2440, 2447, 91 L.Ed.2d 110 (1986) (setting forth the

test to apply in determining whether a state has overstepped its role in regulating interstate commerce).

Where an incidental burden on interstate commerce exists, the regulation will be upheld unless:

the burden imposed on such commerce is clearly excessive in relation to the putative local benefits.... If a legitimate local purpose is found, then the question becomes one of degree. And the extent of the burden that will be tolerated will of course depend on the nature of the local interest involved, and on whether it could be promoted as well with a lesser impact on interstate activities.

*Pike v. Bruce Church, Inc.,* 397 U.S. 137, 142, 90 S.Ct. 844, 847, 25 L.Ed.2d 174 (1970).

■ On the other hand, where a more affirmative discrimination exists effectuating economic protectionism, a stricter scrutiny is applied constituting a "virtual per se" rule of unconstitutionality. *See South–Central Timber Development, Inc. v. Wunnicke,* 467 U.S. 82, 104 S.Ct. 2237, 81 L.Ed.2d 71 (1984) (discussing standard to apply where regulation has affirmative discriminatory effect on commerce). In such a case, the burden is on the State to demonstrate that the statute serves a legitimate local purpose and that no less discriminatory means exist. *See Davrod Corp. v. Coates,* 971 F.2d 778 (1st Cir.1992).

■ Considering the strong police power of the states coupled with the fact that Plaistow Zoning Ordinance § 1.4 is not discriminating against out of state commercial vehicles only, but applies to all commercial vehicles, the Court finds that no affirmative discrimination exists here. Rather, the Court finds that any effect the local ordinance has on interstate commerce is merely incidental. *See Norfolk Southern Corp. v. Oberly,* 632 F.Supp. 1225, 1234 (D.Del.1986) (regulations which govern evenhandedly and not discriminatory to out of state interests subject to incidental burden test).

■ It follows, therefore, that the test to apply is that set forth by the Supreme Court

2. The Commerce Clause of the United States Constitution provides that "Congress shall have the power to regulate commerce with Foreign nations and among the several states." U.S. Const., ART 1, § 8 cl. 3.

in *Pike*. Consequently, NHMTA will be allowed to prove that "the burden imposed on ... commerce is clearly excessive in relation to the putative local benefits." *Pike*, 397 U.S. at 142, 90 S.Ct. at 847. If NHMTA can make such a showing, the Court will hold that the Commerce Clause has been violated. Plaistow's motion to dismiss Count IV of NHMTA's complaint must therefore be denied to allow NHMTA the opportunity to make the required showing.

## IV. *The Supremacy Clause*

In Count V, NHMTA simply sets forth its claim for preemption as a result of the alleged violations of federal law. Consistent with the above rulings, Plaistow's motion to dismiss Count V is denied to the extent that Count V alleges preemption for violation of the STAA, HMTA and the Commerce Clause. Plaistow's motion to dismiss Count V is granted only to the extent that Count V alleges a violation of the NCA.

## V. *Conclusion*

For the reasons set forth above, Plaistow's motion to dismiss Counts I, II, IV and V (to the extent it alleges a violation of the STAA, HMTA, and Commerce Clause) is hereby denied. Plaistow's motion to dismiss Counts III and V (to the extent it alleges a violation of the NCA) is hereby granted.

So ordered.